KNOLL, Judge.
This is an appeal by defendant, Pinecrest State School & Office of Risk Management (Pinecrest), from a worker’s compensation judgment. The hearing officer ordered Pi-necrest to pay plaintiff, Lillie N. Jacobs, all reasonable and necessary medical expenses connected with her work related accident, including a bill for $695 from the Imaging Center, Inc. and Dr. Bruce E. Razza’s bill for treatment of Ms. Jacobs. The hearing officer further awarded plaintiff $500 in attorney’s fees.
Pinecrest appeals, maintaining that the hearing officer erred in finding: 1) that Ms. Jacobs was entitled to treatment by Dr. Razza; and, 2) that the Pinecrest was arbitrary and capricious when it refused to authorize treatment by Dr. Razza. Ms. Jacobs answered the appeal, seeking an increase in the attorney’s fee award at the hearing level and an award of attorney’s fees incurred defending the appeal.
For reasons which follow, we amend the judgment to increase attorney’s fees at the hearing level, affirm the decision of the hearing officer, and award Ms. Jacobs attorney’s fees for defending the appeal.
FACTS
The hearing officer accurately summarized the facts pertinent to this worker’s compensation claim in written reasons for judgment. We adopt her well written facts as our own, which we set forth herein:
“Plaintiff alleges that she sustained an accident on September 30, 1986 during her employment for defendant, Pinecrest State School, as a resident training specialist. Plaintiff testified at the hearing of this matter on October 3, 1991, that the accident occurred when a resident pushed plaintiff .as she attempted to stop a struggle between the resident and a coworker in the shower stall. Plaintiff stepped on a bar of soap and fell backwards, hurting her back.
Plaintiff had previously injured her back on October 25,1985 in a car accident, and was treated by Dr. Ray J. Beurlot, ortho-paedist, through December 18, 1985. Plaintiff returned to Dr. Beurlot’s office October 8, 1986, one day prior to his deposition in the tort case resulting from the car accident. At that time, plaintiff mentioned the accident at work on September 30, 1986, and Dr. Beurlot, suspecting a HNP at L5-S1, referred plaintiff to Dr. John Patton, a neurosurgeon. Dr. Patton began treating plaintiff November 19, 1986. Following a diagnosis of left L5-S1 HNP, she underwent a left L5-S1 microlumbar disectomy on November 7, 1988. Dr. Patton’s records reflect that he continued to treat the plaintiff until November 7, 1990. The progress notes reveal that Dr. Patton doubted the severity of the pain plaintiff complained of almost one year following surgery. By November 7, 1990, almost two years following surgery, Dr. Patton’s notes reflect his opinion that plaintiff was almost impossible to examine due to her complaints, including neck pain, right arm pain, back pain, pain in both legs and pain in both great toes. The record does reflect that plaintiff had complained of weakness and tingling in the left arm to her family doctor, Dr. Carl F. Jory on *1218 July 13, 1989. Dr. Jory felt her symptoms were muscular. Dr. Patton opined that plaintiff was in a very severe dependent cycle of secondary pain and that he had nothing further to offer.
The following month, on December 27, 1990, plaintiff was hospitalized by Dr. Jory with severe back pain. In his report dated March 12, 1991, Dr. Jory stated that he had seen the plaintiff on 3 separate occasions since her surgery for lower back symptoms. He noted that range of motion and straight leg raising tests could not be done due to pain. A CT scan revealed degenerative disc disease at L-5, S-l with apparent superimposed focal disc herniation to the left midline. The CT scan report also notes a questionable soft tissue density projecting into the right neural foramina at L-4, 5, which might represent a small disc herniation or possibly be related to technique. Dr. Jory referred plaintiff to Dr. Bruce E. Razza, orthopaedist.
Paul Badders, State Risk Claims Adjuster, testified that he refused to authorize treatment by Dr. Razza because the plaintiff had already been treated by an orthopaedist, Dr. Beurlot, and had exercised her right to be seen by her choice of physicians in the specialty of ortho-paedics. Approval of treatment by Dr. Razza was requested by plaintiff, through her attorney, upon her visit to Dr. Razza’s office. When approval was denied, plaintiff underwent examination anyway.
The report of Dr. Bruce E. Razza, dated January 8, 1992, indicates that the plaintiff appears to have a recurrent disc herniation at L5-S1 which would likely benefit from surgical intervention.
Dr. Razza opined that additional testing is necessary, i.e., lumbar MRI and EMG nerve conduction studies of the lower extremities, which should also reveal any significant problems at the L4-5 level. Dr. Razza also made reference to a mass in the right anterior iliac region, which had been previously noted by Drs. Jory and Patton.
Dr. Razza specifically stated, ‘Her symptoms and clinical picture by history are the sequelae of the work related injury dating back to May of 1986. She is totally disabled from any gainful employment and her prognosis for gainful employment in the future is poor.’
At trial, Mr. Badders testified that he did not initially authorize the hospitalization of plaintiff by Dr. Jory in December of 1990 because he had no information the hospitalization was work-related. The State relies heavily on the November 7, 1990 progress note of Dr. Patton, which was interpreted to mean that there is nothing wrong with the plaintiff. Plaintiff apparently checked out of the hospital early and then payment was authorized, following receipt of Dr. Jory’s report.
The evidence indicates that Mr. Badders initially gave the same reason for refusing authorization of treatment by Dr. Razza, however, a later review of the file caused him to decide that plaintiff had already been seen by her choice of an orthopaedist, Dr. Beurlot, and that she was not entitled to another opinion.”
PLAINTIFF’S CHOICE OF PHYSICIAN
On appeal, Pinecrest complains that Ms. Jacobs is not entitled to treatment by Dr. Razza because she had previously exercised her choice of being examined by an orthopaedist when she saw Dr. Beurlot on October 8, 1986. Pinecrest claims that, by statute, Ms. Jacobs is allowed to claim one treating physician in the field of orthopaed-ics and, after her initial choice, has to obtain prior consent from the employer or his worker’s compensation carrier for a change of treating physician.
Contrary to Pinecrest’s assertion, at the time of the accident, LSA-R.S. 23:1121 provided:
“A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the *1219 receipt by him of payments under this Chapter.
B. After all examinations have been conducted as provided for in Subsection A of this Section, but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such medical report shall be considered in addition to all other medical reports in determining the injured employee’s fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.”
Thus, the law in effect at the time which Ms. Jacobs’ compensation claim arose did not require prior authorization before choosing a physician of her choice.[1] Even the latest amendments to the statute requiring approval after the initial choice of a treating physician in a particular field, support the conclusion of the hearing officer because Dr. Razza was Ms. Jacobs’ initially chosen orthopaedist.[2]
The record evidence presented at the hearing reflects that Dr. Beurlot treated Ms. Jacobs for a previous injury resulting from an automobile accident in 1985. Dr. Beurlot treated her from December 4, 1985 through July 14, 1986. Her return to his office three months later was in preparation for a deposition in another matter scheduled for the next day, as reflected by the doctor’s report on October 8, 1986.
Although Dr. Beurlot’s report does mention her injury at work the week before, he notes that he referred her to Dr. Patton, whom she saw on November 19, 1986. She testified at the hearing that she considered Dr. Patton to be her treating physician, although Dr. Beurlot apparently signed a physician’s certificate for sick leave on October 31, 1986. Pinecrest never paid, nor did Dr. Beurlot ever bill Pine-crest, for services to Ms. Jacobs as a result the work related accident. The fact that Dr. Beurlot referred her to Dr. Patton for the work related injury and at some point in time, gave her a sick leave excuse, is not sufficient evidence to show that Dr. Beur-lot was treating Ms. Jacobs for the work related injury. Simply put, even if the latest amendments were in effect, the evidence does not preponderate that Ms. Jacobs chose an orthopaedic surgeon other than Dr. Razza for treatment. Accordingly, we find the hearing officer correctly ordered Pinecrest to pay for all reasonable and necessary medical expenses connected with Ms. Jacobs’ work related accident.
CLAIM FOR ATTORNEY’S FEES
Pinecrest argues that the hearing officer erred in ordering it to pay $500 in attorney’s fees. Conversely, Ms. Jacobs answered the appeal seeking an increase in that award and an additional award of attorney’s fees on appeal.
*1220 We find that Ms. Jacobs is entitled to an award of attorney’s fees under LSA-R.S. 23:1201.2. We find Pinecrest was arbitrary and capricious in refusing authorization for treatment by Dr. Razza, especially when the CT scan and report received after the examination showed a significant abnormality which the doctor opined was work related, and in light of Pinecrest’s failure to produce contradictory evidence.
Ms. Jacobs had to hire legal counsel to obtain payment for treatment which Pi-necrest was legally required to pay. Counsel filed various pleadings, participated in a one day hearing during which he called Ms. Jacobs as a witness and cross examined the witness called by Pinecrest, and spent additional time in defending the State’s appeal, including filing a brief and participating in oral argument. See, Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir. 1988); Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir.1989), writ denied, 553 So.2d 466 (La.1989). We agree with counsel for Ms. Jacobs that the attorney’s fee award of $500 at the hearing level was too low. We hereby increase those attorney’s fees to $2,500, and further award $1,500 attorney’s fees for defending the appeal.
For the above and foregoing reasons, the judgment at the hearing level in favor of plaintiff, Lillie N. Jacobs, is affirmed as amended.
IT IS ORDERED ADJUDGED AND DECREED, that defendant, Pinecrest State School & Office of Risk Management, pay $4,000 in attorney’s fees unto plaintiff. Costs are assessed to defendant, Pinecrest State School & Office of Risk Management.
AFFIRMED AS AMENDED AND RENDERED.

. We recognize that in Fontenot v. Fireman's Fund Ins. Co., 549 So.2d 917 (La.App. 3rd Cir. 1989) this court erroneously applied the later amendments of LSA-R.S. 23:1121 to a compensation claim which arose in December of 1986. This is simply an inadvertence, which we recognize now and will not follow.

. By 1991, when Ms. Jacobs first saw Dr. Razza, the statute had been amended several times and now provides in part:
"A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his worker's compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker’s compensation carrier for a change of treating physician with that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.”