649 So.2d 508 (1994)
Toby VINCENT, Plaintiff-Appellee,
v.
JUSTISS OIL COMPANY, INC., Defendant-Appellant.
No. 94-329.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Writ Denied January 27, 1995.
*509 Paul Boudreaux Jr., Alexandria, for Toby Vincent.
Joseph Wilson, Jena, for Justiss Oil Co., Inc.
Before THIBODEAUX, COOKS and SAUNDERS, JJ.
COOKS, Judge.
Justiss Oil Company appeals the hearing officer's method of calculating claimant's, Toby Vincent, average weekly wage and award of supplemental earnings benefits. Justiss also challenges the award of penalties and attorney fees. We amend and affirm.

FACTS
Toby Vincent was employed by Justiss Oil Company, Inc. (Justiss) as a drilling rig roughneck. On January 18, 1991, approximately two weeks after he was hired, Toby fell and twisted his left ankle when his foot landed between two drill pipes. Toby was treated in the emergency room at Centerville Mississippi Hospital. On January 21, 1991, he was examined by Dr. I.C. Turnley, a general medicine practitioner, who diagnosed his condition as a severe ankle sprain. Dr. Turnley referred Toby to Dr. L. Donovan Perdue, an orthopaedic surgeon, for further evaluation. Dr. Perdue also concluded, on February 25, 1991, Toby's left ankle was severely sprained. After several months of conservative treatment, Dr. Perdue released Toby to return to work on June 17, 1991, despite Toby's continued complaints of pain, swelling and a popping sound in his ankle.
Toby returned to Dr. Perdue's office in July and reported his ankle swelled when he worked and he felt an intermittent popping. Dr. Perdue suggested ankle arthroscopy and referred Toby to Dr. Luke Bordelon, an orthopaedic surgeon who specialized in treatment of the foot. Dr. Bordelon examined Toby in September and October of 1991. He ordered x-rays, a MRI, a bone scan and a CAT scan, all of which were normal. However, Dr. Bordelon noted in his report that anterior instability of the ankle is difficult to define by objective means and opined that ankle arthroscopy might be helpful. In his experience, he noted, using ankle arthroscopy as a means to tighten loose ligaments in the foot was helpful in 50% of his cases.
Toby selected Dr. Christopher Rich, an orthopaedic surgeon, to examine his ankle. After examining Toby on August 13, 1991, Dr. Rich recommended ankle arthroscopy. He also stated Toby could not return to work on an oil rig while his ankle was unstable.
Dr. Rich performed the ankle arthroscopy on June 12, 1992. Justiss did not agree to *510 pay for this procedure until August of 1992. Dr. Rich removed scar tissue and noted Toby had a meniscal or impingement type lesion on his ankle. Toby reached maximum medical improvement on December 9, 1992. Dr. Rich noted Toby's deficits on his functional capacity evaluation prohibited him from returning to work on an oil rig.
Justiss paid Toby $240 in weekly worker's compensation benefits from the date of his injury, January 18, 1991, until Dr. Perdue released him to return to work on June 17, 1991. Justiss' calculation was based on an average weekly wage of $360. Toby's benefits were not reinstated until August 25, 1992, retroactive to August 26, 1991.
The hearing officer held Justiss did not properly calculate Toby's average weekly wage and determined Toby was entitled to the maximum weekly benefit of $282. Justiss was ordered to pay the difference of $42 for each week it paid weekly benefits, and $282 for the period between June 18, 1991 through August 25, 1991. Toby was awarded supplemental earnings benefits as well as penalties and attorney fees of $5,000. Justiss appeals. Toby answers, asserting the hearing officer did not state the correct amount of benefits he is entitled to resulting from Justiss' underpayment. He also requests additional attorney fees for defending the appeal.

DISCUSSION

Average Weekly Wage
Justiss complains the hearing officer did not properly calculate Toby's average weekly wage. LSA-R.S. 23:1021(10)(a)(i) provides the following method for calculating Toby's average weekly wage:
If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater. (Emphasis added.)
Toby's payroll records show he was hired on January 7, 1991 at an hourly rate of $9.00. When he was injured on January 18, he had worked only ten days but had accrued 118 hours.[1] Justiss argues Toby's hours should be divided by four to determine his average weekly wage. The flaw in this argument is Toby worked only two weeks before he was injured. The statute clearly instructs us to calculate an employee's weekly wage by using the hours worked in the four weeks worked before the accident, i.e., it is assumed the employee has worked for the employer for at least four weeks. If we were to divide the number of hours Toby worked by four, we would include time when Toby was not employed by Justiss. This calculation method is unjust. The result arrived thereby is not supported by the statute and conflicts with our jurisprudential rule to liberally construe worker's compensation statutes in favor of the injured worker. See Fusilier v. Slick Construction Co., 640 So.2d 788 (La.App. 3d Cir.1994); Lester v. Southern Casualty Ins. Co., 466 So.2d 25 (La.1985). Therefore, we conclude Toby's average weekly wage was correctly calculated by the hearing officer as follows:
118 hours for 2 weeks = 59 average hours worked before the accident
Regular time hourly wage of $9.00 × 40 = $360.00
Overtime hourly wage of $13.50 × 19 hours = $256.50
$360.00 + $256.50 = $616.50 average weekly wage
Given these calculations, Toby is entitled to the maximum weekly benefits as awarded by the hearing officer.
Toby notes the hearing officer ordered Justiss to pay him an additional $42.00 per week for the 83 weeks he received weekly benefits. However, the hearing officer erroneously stated the total amount due was $3,066.00. We amend the judgment to show the correct amount due is $3,486.00.

SUPPLEMENTAL EARNINGS BENEFITS
Justiss contends the hearing officer erred in granting an award of supplemental *511 earnings benefits. An injured employee seeking supplemental earnings benefits has the burden of proving by a preponderance of the evidence his injury resulted in an inability to earn ninety percent or more of the wages he was receiving at the time of his injury. LSA-R.S. 23:1221(3)(c)(i); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App. 2d Cir. 1991). The hearing officer's determinations regarding whether the employee's testimony is credible and whether the employee has discharged his burden of proof are factual in nature and should not be disturbed on review unless clearly wrong or manifestly erroneous. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992).
Toby underwent a functional capacity evaluation. The results indicate he has a low endurance for forward bending while standing, kneeling, static standing and walking. Due to his unsafe body mechanics, he was advised to avoid vertical lifts from the floor to his waist, crawling, deep static crouching, repetitive squats, stair climbing, step ladder climbing and balance activities. Dr. Rich stated that Toby could not return to work on a drilling rig, and he needed to explore vocational retraining for light or medium duty jobs. Toby applied for several minimum wage jobs that did not require prolonged standing or wearing boots; and he has been rejected on each occasion. Thus, Toby has established a prima facie case of entitlement to supplemental earning benefits.
Once the employee has established a prima facie case of entitlement to supplemental earnings benefits, the burden shifts to the employer to show the employee is physically able to perform work that was offered or available in a reasonable geographic area. Prudhomme, supra.
Justiss argues it offered Toby a light-duty job on the drilling rig as an extra man. Ray Thompson, manager of employee relations for Justiss, testified a job was designed for Toby. He was told "make yourself as useful as you can within the restrictions that you understand from your doctor and go to work." Thompson explained that as an extra man on a drilling rig, Toby would have been expected to perform minor and routine maintenance on the ancillary engines and apparatuses at the drilling sites. Thompson told Toby he would not have to wear steel-toed, steel-shanked boots, work on the drilling rig floor, or wear a hard hat.
Toby testified he rejected Justiss' offer because safety steel-toed boots, which he could not wear, are required on a drilling rig and he did not believe he could safely walk on the mud that collects on the floor of a rig. He also stated he rejected the offer because given his sixteen years of experience working in oil fields, he did not believe there was a light duty job on a drilling rig. Toby also stated he believed he would be asked to act as a substitute and provide assistance to the other roughnecks. Richard Galloway, M.S.W., Ph.D., a nationally certified rehabilitation counselor licensed in Louisiana, evaluated Toby. He testified he was familiar with the working conditions on drilling rigs, and he would not recommend Toby work in or around a drilling rig because of the physical demands and the need for physical dexterity. On this record, we cannot say the hearing officer was clearly wrong in concluding Justiss failed to carry its burden of proving there was drilling rig work available to Toby that he was physically able to perform. Further, the burden rests with the employer to show other work was available in the area where Toby resided that he could successfully perform. The employer failed to carry this evidentiary burden as well. Accordingly, Toby is entitled to supplemental earnings benefits. See Smith v. Louisiana Dept. of Corrections, 633 So.2d 129 (La. 1994); Peveto v. WHC Contractors, 630 So.2d 689 (La.1994).

PENALTIES AND ATTORNEY FEES
As its final argument, Justiss challenges the hearing officer's award of penalties and attorney fees. LSA-R.S. 23:1201(E) directs the trial court to assess a 12% penalty for nonpayment unless the employer or the insurer "reasonably controverted" the employee's right to benefits. A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual *512 and medical information presented by the employee. Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir. 1988), writ denied, 537 So.2d 1168 (La.1989). Under LSA-R.S. 23:1201.2, the employee is entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause. An award of attorney fees is precluded when the employer asserts a good faith defense. Holmes v. Int'l Paper Co., 559 So.2d 970 (La.App. 2d Cir.1990). The determination of whether an employer should be cast with penalties and attorney fees is a question of fact and the hearing officer's findings shall not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App. 2d Cir.1993).
The hearing officer awarded penalties and attorney fee because Justiss did not agree to pay for Toby's arthroscopic surgery; and, it failed to reinstate weekly benefits until after the depositions were taken, the case was set for trial, Toby had surgery and the results of surgery were shown. Drs. Perdue, Bordelon and Rick recommended arthroscopic surgery, and Justiss refused to pay for this procedure for more than one year.
Justiss claims it refused to pay for the arthroscopic surgery because it was diagnostic. Thompson also testified he refused to pay for the procedure because Dr. Bordelon said only 50% of his patients improve after surgery. These reasons are not sufficient justification for denying Toby worker's compensation benefits. He was injured in the course and scope of his employment; and, he is entitled to medical treatment related to his injury. Furthermore, the employer does not have the sole option to decide it will not pay for testing or treatment because it does not like the success rate of a particular course of treatment.
Toby's conservative treatment was not successful. In brief, Justiss quibbles over the language used by the physicians during their depositions. Dr. Perdue's medical records show he discussed ankle arthroscopy with Toby and referred him to Dr. Bordelon for further evaluation. Dr. Bordelon clearly stated anterior instability was difficult to define by objective means (x-ray, bone scan, CAT scan) and ankle arthroscopy might be helpful. Dr. Rich also recommended ankle arthroscopy and performed the procedure. On this record, we cannot say the hearing officer was clearly wrong in determining Justiss failed to reasonably controvert Toby's claim.

ATTORNEY'S FEES ON APPEAL
Toby filed a timely answer requesting assessment of additional attorney's fees for defending the appeal lodged by the employer. We award an additional $1,500 in attorney fees to Toby for the legal work performed on appeal. See Jacobs v. Pinecrest State School, 619 So.2d 1216 (La.App. 3d Cir.1993).

CONCLUSION
For the foregoing reasons, the hearing officer's judgment is affirmed and amended to reflect Toby is entitled to receive $3,486.00 as a result of Justiss' underpayment. Toby also is awarded an additional $1,500 in attorney fees. Costs are assessed to Justiss.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[1] The parties and the hearing officer used 112 hours to calculate Toby's average weekly wage. However, Toby's payroll records indicates he worked 118 hours before he was injured.