I,SAUNDERS, Judge.

FACTS

The Claimant, Paul Cannon, sustained a work-related injury to his lower back while employed as a laborer for the Appellant, Dixie Glass (AF & D), on December 2, 1993. At the time of the accident, Claimant was a truck loader for Dixie Glass and had been employed by the company for three and a half years. Claimant injured his lower back at work when he pulled on a metal beam to hook it to an overhead crane.
Dr. John Cobb, Claimant’s orthopedic surgeon, diagnosed Claimant as having a herniated nucleus pulposus after a Lumbar MRI dated October 30, 1995, revealed a small central and right lateral focal disc protrusion at L4-5. Dixie Glass paid for Claimant’s lower back treatment throughout his employment with the company. Claimant’s employment with Dixie Glass ended in August 1996. Claimant then filed a claim for weekly indemnity benefits on January 4, 1997. Dixie Glass defeated Claimant’s demand through an exception of prescription.
On August 25, 1997, Dr. Cobb recommended an anterior lumbar discectomy with a fusion to address Claimant’s symptomatic disc at L4-5, nerve compression, and instability in his lower back. Claimant initially elected not to have surgery because he wanted to try conservative treatments first. Claimant based his decision not to undergo surgery on the fact that he was enrolled in vocational-technical drafting school and was restricting himself to light activities so that he could live with the pain. Unfortunately, Claimant received only temporary relief from his lower back pain through conservative treatment, which included physical therapy, exercises, and a low back injection.
In January 1998, Claimant decided to have the surgery Dr. Cobb had recommended because he continued to have back pain and was experiencing | ¡.paralysis in his left leg. Claimant testified that he experienced a lot of pain when he tried to walk because his left leg lagged behind him, causing him to drag it. Claimant also testified that he experienced constant lower back pain.
On January 6, 1998, Claimant’s attorney sent a letter to Dixie Glass’ attorney advising him that Claimant was requesting authorization to undergo the recommended surgery. On the same day, Claimant’s attorney also sent a letter to Bonnie Faulkinberry, an adjuster with Crawford and Company, requesting authorization of the surgery.
Initially, Ms. Faulkinberry attempted to schedule an appointment with Dr. John Humphries, who had seen the Claimant in December 1995 and had recommended that no surgery be done at that time. Dr. Humphries sent a letter dated January 15, 1998, stating that he no longer performed second opinions.
Ms. Faulkinberry then scheduled a second medical opinion with Dr. Thomas Montgomery on February 11, 1998. *1183 Claimant was unable to see Dr. Montgomery until March 11,1998, however, because Dr. Montgomery was called away on an emergency the date of the initial appoint ment. After his examination of Claimant, Dr. Montgomery reported that he thought Claimant was a very valid individual and gave a very reasonable exam. However, Dr. Montgomery stated he would not recommend a surgery without Claimant undergoing a myelogram and a post-myelo-gram CT to document the herniated disc and flexion/extension x-rays to determine whether Claimant had any instability of his lumbar spine.
On April 2, 1998, Ms. Faulkinberry wrote a letter to Dr. Cobb which stated:
We enclose for your review a copy of a second opinion orthopedic report from Dr. Thomas J. Montgomery dated March 11th, 1998.
13Pr. Montgomery recommends further testing prior to any recommendation for surgery.
In reviewing our file, we note the last office visit by this Claimant was August 25th, 1997. If you have seen Mr. Can[n]on since that time, please provide us with any medical reports regarding your treatment. We await your further recommendations.
In response, on June 10, 1998, Dr. Cobb wrote to Ms. Faulkinberry, advising her that he had reviewed Dr. Montgomery’s report and did not have any comments regarding Dr. Montgomery’s evaluation and recommendations. Furthermore, Dr. Cobb stated that he had seen Claimant on March 25, 1998. During that visit, Dr. Cobb reported that he had discussed Claimant’s back condition with him and had given him a trigger point injection in his lower back. Doctor Cobb indicated that Claimant had requested Vax-D; however, Dr. Cobb felt that Claimant’s problem was more of instability and that his recommendation regarding treatment remained the same. In this correspondence, Dr. Cobb reiterated his earlier recommendation that Claimant needed disc excision and stabilization.
Then, in a letter dated June 22, 1998, Dr. Montgomery wrote to Ms. Faulkinberry to tell her that he did not think that the Yax-D therapy would benefit Claimant. On June 29, 1998, Ms. Faulkinberry sent Claimant’s counsel a copy of Dr. Cobb’s updated medical report of June 10, 1998. Thereafter, the two parties did not communicate for a period of approximately eight months.
Correspondence between the two parties resumed on February 23, 1999, when Claimant’s attorney wrote a letter to Ms. Faulkinberry requesting authorization of the back surgery requested by Claimant in January 1998. Immediately following, on February 24, 1999, Claimant filed the instant workers’ compensation suit against Dixie Glass. Then, on February 25, 1999, Ms. Faulkinberry wrote to Claimant’s attorney and advised that she would authorize an office visit for an evaluation ^examination by Dr. Cobb. Ms. Faulkin-berry felt this was necessitated because Claimant had not treated with Dr. Cobb since March 25, 1998. Claimant’s attorney responded to Ms. Faulkinberry’s letter, on March 2, 1999, advising that the surgery requested was the same surgery that Dr. Cobb had recommended earlier and that the surgery was related to Claimant’s injury while he was employed by Dixie Glass.
Shortly after that, on March 29, 1999, Dixie Glass’ attorney deposed Claimant. Dixie Glass filed an answer to the workers’ compensation claim and a Motion to Appoint an Independent Medical Examiner on May 3, 1999. Then on May 5, 1999, Claimant’s attorney sent a letter to Dixie Glass and requested a copy of the conflicting medical opinion concerning Claimant’s surgery. On May 7, 1999, Dixie Glass’ attorney forwarded Dr. Montgomery’s report dated April 14, 1999, which indicated that Dr. Montgomery thought Claimant had a herniated disc but no proof of instability. Dr. Montgomery’s report indicated that unless flexion/extension films on re *1184 cent x-rays were taken to determine instability, he would recommend a discectomy over any type of fusion.
Thereafter, Claimant scheduled an appointment with Dr. Cobb for June 9, 1999, and requested the flexion/extension films referred to in Dr. Montgomery’s report. Dr. Cobb’s report regarding those films revealed instability consistent with Dr. Cobb’s earlier diagnosis. On June 28, 1999, Dr. Montgomery wrote a letter to Ms. Faulkinberry stating that, in light of Dr. Cobb’s June 9, 1999 report and the films illustrating the instability, it was not unreasonable to approve Claimant for an anterior fusion and discectomy. Finally, on July 7, 1999, Ms. Faulkinberry wrote to Dr. Cobb to authorize the surgery.
The trial judge rendered judgment in the suit filed by Claimant on January 6, 2000. The judge found judgment in favor of Claimant and against Defendant, Dixie | BGlass, for statutory penalties in the amount of $2,000.00 with legal interest from the date of judgment. The judge also awarded attorneys fees in favor of Claimant and against Defendant, Dixie Glass, in the amount of $4,000.00 with legal interest from the date of judgment. Finally, the judge assessed all costs of the proceedings to the Defendant, Dixie Glass.

LAW AND ANALYSIS

STANDARD OF REVIEW
The determination of whether an employer should be cast with penalties and attorneys fees in a workers’ compensation proceeding is a question of fact, and a workers’ compensation judge’s findings shall not be disturbed on appeal absent manifest error. Vincent v. Justiss Oil Co., 94-329 (La.App. 3 Cir. 11/2/94); 649 So.2d 508, writ denied, 94-2869 (La.1/27/95); 650 So.2d 242.
ASSIGNMENTS OF ERROR
On appeal, Appellant, Dixie Glass, makes the following assignments of error:
1. The trial judge erred in assessing penalties against the Appellant since the Appellant based its initial refusal to authorize surgery on competent medical evidence, and Appellant promptly approved surgery once the basis for refusal ceased to exist.
2. The trial judge erred in assessing attorneys fees against the Appellant since Appellant was covered by insurance, and its insurer’s initial refusal to authorize the recommended surgery was not arbitrary, capricious, or without probable cause.
In his answer to Appellant’s appeal, Claimant requests an award of additional attorneys fees for his counselor’s work on appeal.
PENALTIES
In Appellant’s first assignment of error, Appellant alleges that the trial judge erred in assessing penalties against it since Appellant’s initial refusal to authorize surgery was based on competent medical evidence, and Appellant promptly approved | fisurgery once the basis for refusal ceased to exist.
Appellant asserts that the law in effect at the time of injury is the law which establishes a claimant’s rights to penalties and attorneys fees in a workers’ compensation case. Under Appellant’s analysis, the law governing this matter would be the 1993 version of La.R.S. 23:1201 because Claimant was injured on December 2, 1993.
Appellant’s contention is without merit. This court recently recognized, in Skipper v. Acadian Oaks Hosp., 00-67 (La.App. 3 Cir. 5/3/00); 762 So.2d 122, that the law in effect at the time medical benefits are denied, rather than the law in effect at time of claimant’s injury, governs the penalties available under workers’ compensation. The court in Skipper noted that while a claimant’s injury triggers his entitlement to medical benefits, the procedures for delivering those benefits are subject to change. Id. When conduct occurs *1185 that merits penalties or attorneys fees after a change in the compensation law, the fact that penalties or attorneys fees were not available at the time of claimant’s accident is of no consequence. Id. An award of penalties or attorneys fees does not govern or modify an employee’s substantive right to compensation based on his injury, but rather punishes the employer for failing to provide that compensation. Id.
Claimant was injured on December 2, 1993. Appellant’s actions in denying Claimant medical benefits, however, did not take place until after his request for authorization of surgery in January 1998. Therefore, the applicable version of La. R.S. 23:1201 was the one in effect at the time the Appellant denied Claimant medical benefits. The version of La.R.S. 23:1201 applicable after January 1998 is the current version of La.R.S. 23:1201. The current version of the statute has been in effect since June 29,1995.
17Under the current version of the statute, medical benefits must be paid within sixty days after the employer or insurer receives written notice thereof. La.R.S. 23:1201(E). Penalties are available against an employer or an insurer whose fault caused a delay in the payment of medical benefits. La.R.S. 23:1201(F)(1), The statute allows a trial judge to assess such penalty as either twelve percent of the amount of unpaid medical benefits, or as fifty dollars per calendar day that the medical benefits remain unpaid. La.R.S. 23:1201(F). A penalty calculated as fifty dollars per calendar day must not exceed a maximum of two thousand dollars in the aggregate for any claim. Id. The statute also allows a trial judge to award reasonable attorneys fees for each disputed claim. Id.
Under La.R.S. 23:1201, there are two means for an employer or insurer to avoid the assessment of a penalty. An employer or insurer may escape the penalty provision if: (1) its nonpayment stemmed from conditions over which the employer or insurer had no control, or (2) the employer or insurer reasonably controverted the employee’s right to such compensation or medical benefits. La.R.S. 23:1201(F)(2).
“[La.]R.S. 23:1201 provides, generally, for the imposition of sanctions when workers’ compensation benefits are not provided as required by law.” Clifton v. Rapides Reg’l Med. Ctr., 96-509, p. 5 (La. App. 3 Cir. 10/9/96); 689 So.2d 471, 474. In Clifton, this court determined that the defendant owed a duty to the workers’ compensation Claimant to timely initiate and complete a utilization review. Id. This court affirmed an award of attorney fees against the employer in Clifton because of the employer’s excessive delay in conducting the utilization review. Id. The employer’s delay in Clifton exceeded eighteen months. Id. In awarding penalties, this court reasoned that the employer, by delaying the utilization review, had in effect denied the Claimant medical services. Id.
1 sHere, as in Clifton, the workers’ compensation benefits were not provided as required by law. The delay on the part of the Appellant in providing authorization for Claimant’s surgery was such that, in effect, it denied Claimant medical services provided for under the workers’ compensation statute. Dr. Cobb recommended that Claimant undergo surgery on August 25, 1997. Claimant informed the Appellant of his desire to pursue the recommended surgery through correspondence dated January 6, 1998. Appellants did not approve Claimant’s request for surgery, however, until July 7, 1999. As in Clifton, the time between Claimant’s request for authorization of medical treatment and the completion of the utilization review exceeded eighteen months. Appellant took approximately nineteen months from the time of Claimant’s request on January 6, 1998 to authorize the recommended back surgery. During that nineteen-month period, Appellant took no action from June 29, 1998, to February 25, 1999, a period of approximately eight months.
*1186 Furthermore, as in Clifton, Appellant offered no reasonable excuse for its delay in providing the requested medical treatment. As noted in La.R.S. 23:1201(F)(2), an employer may escape liability for its delay in providing medical benefits if: (1) its nonpayment stemmed from conditions over which the employer had no control, or (2) the employer reasonably controverted the employee’s right to such compensation or medical benefits. At trial, the judge gave Ms. Faulkinberry a chance to explain the Appellant’s delay.
THE COURT: ... [W]hy exactly from June of ’98 through February of ’99 was nothing done to try to determine any further last — at last correspondence it was a matter of you submitted what Doctor Montgomery wanted to do, which was a myelogram with CT and lumbar and flexion fusion — or lumbar and flexion x-rays of Mr. Can[n]on’s low back, which is the area of his injury, there was ^nothing done at that point or during that period of time from June to February. I guess my question is why, and what basis?
THE WITNESS: ... [A]s best as I can recollect in June he ... asked for VAX-D treatment it appeared that he was changing his mind again about the surgery.
THE COURT: Changing it how, as far as not wanting the surgery, wanting to try something different?
THE WITNESS: Wanting to try something different.
[[Image here]]
THE COURT: Why was there-I guess are you saying that because he wanted to try something different did you think the surgery was out of the window for him or-
THE WITNESS: No, we were still trying to clarify that with Doctor Montgomery and Doctor Cobb as to the further testing.
The judge also gave Ms. Faulkinberry an opportunity to explain why she had not given Dr. Montgomery authorization to run the necessary tests needed to determine whether Dr. Cobb’s surgical recommendation was reasonable.
THE COURT: ... [W]hy didn’t you tell Doctor Montgomery ... to go ahead and run the flexion/extension films to get a clearer picture because at this point we’re talking about x-rays, a couple of hundred dollars, versus, a CT-myelogram CT is a couple of thousand. Why didn’t you tell Doctor Montgomery to do it?
THE WITNESS: Let’s see.
MR HAUTOT: Your Honor, I think the record will reflect that the witness answered that in response to Plaintiff counsel’s questioning.
After a review of the pertinent part of the record, the trial judge summarized |inMs. Faulkinberry’s testimony and asked her if his statement was accurate. The record reflects this conversation.
THE COURT: Right. So I guess I answered my own question, which is, you didn’t send a letter authorizing them, but you certainly never said don’t do it either, I mean, you were-if I’m understanding or appreciating the overall context of your testimony, you kind of left it with the doctors as to what they should have done, and they didn’t do anything and you just didn’t do anything, is that right?
THE WITNESS: Right.
As reflected in the testimony above, the only reason asserted by Appellant for its delay in processing Claimant’s request was its own inaction. Appellant had the ability to authorize the further testing needed to proceed with the processing of Claimant’s request for surgery, yet Appellant chose to remain inactive.
*1187 The purpose of workers’ compensation penalties statutes is to discourage employers from assuming attitudes of indifference toward injured employees. See Eaton v. General Accident Group, 292 So.2d 773 (La.App. 4 Cir.1974). In handling a workers’ compensation request for medical treatment, the employer should handle the request as promptly and with as much diligence as he would handle a member of his family’s medical treatment. In the instant case, the Appellant’s cavalier attitude regarding Claimant’s request for surgery is reflected in the record and merits the award of penalties. Accordingly, we find that the trial court was not manifestly erroneous in its award of penalties against the Appellant.
ATTORNEYS FEES
In Appellant’s second assignment of error, Appellant asserts that the trial judge erred in assessing attorneys fees against it because it was covered by insurance, and its insurer’s initial refusal to authorize the recommended surgery was not arbitrary, 11 ¶ capricious, or without probable cause.
Appellant’s argument is based on the 1993 version of La.R.S. 23:1201.2, which provided:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer ... to payment of all reasonable attorney’s fees for the prosecution and collection of such claim....
Under the 1993 version of La.R.S. 23:1201.2, a judge could assess attorneys fees only against an insurer, or an employer whose liability was not covered by insurance. Appellant’s argument, essentially, is that an employer, such as Dixie Glass, who is insured does not fall under the penalty provisions of the workers’ compensation statute applicable in this claim. Appellant’s argument is erroneous in two regards. First, this court has chosen, as discussed earlier, to apply the law at the time medical benefits are denied in determining what penalties and attorneys fees are available to a workers’ compensation claimant. See Skipper, 00-67; 762 So.2d 122. Second, La.R.S. 23:1201.2 deals only with the discontinuance of medical payments. The issue here is the Appellant’s failure to authorize the requested surgery. Therefore, the award of attorneys fees in this instance must be analyzed under La. R.S. 23:1201.
The applicable portion of La.R.S. 23:1201 states:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits | ^remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
*1188 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Under this provision, an award of attorney fees is analyzed in the same manner as an award of penalties. See Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98); 721 So.2d 885. As we have already discussed the application of this statute at length regarding the propriety of the trial court’s award of penalties, we feel it is unnecessary to repeat that discussion here with regards to attorneys fees. It is sufficient to note that Appellant delayed the approval of Claimant’s surgery and that this delay was not supported by evidence which reasonably controverted the need for surgery. Accordingly, this court finds Appellant’s argument that the trial court improperly assessed attorneys fees against it is without merit.
ANSWER TO APPEAL
In Claimant’s Answer to Appellant’s appeal, he requests an additional award of attorney fees for his attorney’s work done on appeal. A workers’ compensation Claimant is entitled to an increase in attorneys fees to reflect additional time incurred in defending an employer/carrier’s unsuccessful appeal. See Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95); 653 So.2d 154, writ denied, 95-1133 (La.6/23/95); 656 So.2d 1017; Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3 Cir.1989). The instant appeal necessitated additional preparation by | ^Claimant’s attorney. Accordingly, we find that Claimant is entitled to an additional $2,000.00 in attorneys fees for his counsel’s time spent in preparing this appeal.

DECREE

Considering the foregoing discussion, we find that the trial court did not err in finding judgment in favor of the Claimant, Paul Cannon. Furthermore, we award Claimant additional attorneys fees of $2,000.00. Costs are assessed against the Appellant, Dixie Glass. The judgment shall bear interest from the date of judgment.
AFFIRMED AS AMENDED.