STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-554


KEVIN JONES

VERSUS

CRAFT RESOURCE SOLUTION AND
ACCIDENT FUND INSURANCE
COMPANY OF AMERICA


**********


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NUMBER 22-01869
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Clayton Davis, Judges.


AFFIRMED.

Lawrence Blake Jones
Rebecca M. Massa
BLAKE JONES LAW FIRM, LLC
701 Poydras Street, Suite 4100
New Orleans, Louisiana  70139
(504) 525-4361
COUNSEL FOR CLAIMANT/APPELLANT:
    Kevin Jones

Eric J. Waltner
ALLEN & GOOCH, A Law Corporation
2000 Kaliste Saloom Road, Suite 400
Lafayette, Louisiana  70508
(337) 291-1400
COUNSEL FOR DEFENDANTS/APPELLEES:
    Craft Resource Solutions, LLC
    Accident Fund General Insurance Company

**WILSON, Judge.**

Claimant, Kevin Jones (Jones), appeals the judgment rendered in favor of his employer, Craft Resource Solutions, LLC (Craft Resource), and its workers' compensation insurer, Accident Fund General Insurance Company (Accident Fund). For the following reasons, we affirm the judgment in its entirety.

I.

## ISSUES

Jones alleges the following assignments of error:

1. The Trial Court committed legal error in finding that Claimant-Appellant's average weekly wage should be based on a forty-hour presumption rather than the actual hours worked.

2. The Trial Court erred in finding indemnity benefits are not owed from March 28, 2022.

3. The Trial Court erred in failing to award [C]laimant past temporary total indemnity from date benefits were terminated, March 28, 2022, until March 4, 2024.

4. The Trial Court erred in not finding supplemental earnings benefits are due from March 4, 2024, until present.

5. The Trial Court was manifestly erroneous in finding that Defendant[s]-Appellees reasonably controverted Claimant-Appellant's claims for improper termination of indemnity benefits.

6. The Trial Court committed manifest error in finding Dr. Michael Duval is [C]laimant's choice of physician and not Dr. Malcolm Stubbs.

7. The Trial Court committed legal error in finding [C]laimant owes reimbursement for an unauthorized settlement forfeiting all benefits from December 15, 2019[,] until [C]laimant buys back the amount of the settlement.

8. The Trial Court committed legal error in denying Claimant-Appellant's claims for penalties and attorney's fee[s].

9. The Trial Court committed legal error in denying Claimant-Appellant's claims for costs and legal interest.

## II.

## STANDARD OF REVIEW

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* at 883. However, "[w]hen legal error interdicts the fact-finding process in a workers' compensation proceeding, the *de novo*, rather than the manifest error, standard of review applies." *Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp.*, 11-179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990 (emphasis in original). In this case, as discussed below, we do not find that the WCJ committed any legal errors and review this matter under the manifest error standard of review.

## III.

## FACTS AND PROCEDURAL HISTORY

Craft Resource is a staffing company that provides general laborers and fitters to its clients. Jones was hired by Craft Resource in August of 2018. Jones contends that he attended a tank cleaning safety class from August 6–12, 2018, in Carencro, Louisiana, in anticipation of a job as a tank cleaner.[1] Jones started work as a

---

[1] Randy Martin (Martin), the owner of Craft Resource, testified that Jones did not attend a tank cleaning safety class and instead was doing administrative work to get things ready for the job at the paper mill.

supervisor for a short-term project at a paper mill in Dodson, Louisiana, on September 15, 2018. Just a few days later, on September 21, 2018, Jones was driving a van to take a person whose employment had been terminated to the bus station. He swerved to avoid a vehicle and hit a concrete column while travelling at approximately fifteen to twenty miles per hour. Jones alleges that his knee hit the dashboard and that the airbag struck his face, causing severe injuries. He reported injuries to his mouth, teeth, forearm, right knee, neck, back, and right shoulder.

After working a few days of light duty, Jones was restricted to no-work status by Dr. Michael Heard.[2] Martin testified that Jones worked light duty for the rest of the project and was laid off with everyone else when the project ended.

Jones underwent multiple surgeries over the next two years. Jones had two surgeries on his right knee (arthroplasty performed by Dr. Duval in November of 2019, and arthroscopy performed by Dr. Malcolm Stubbs on September 17, 2021); neck surgery, right shoulder surgery, right carpal tunnel and trigger thumb release, and dental work.

On December 14, 2018, Jones was involved in another automobile accident as a passenger in a car that was hit by a truck that fled the scene of the accident. He was injured in this accident and settled his claims for $2,000.00, without filing a lawsuit.

On April 14, 2020, Dr. Gregory Gidman performed an independent medical examination (IME) at the Acadiana Center for Orthopedic and Occupational Medicine. Dr. Gidman opined that Jones "most probably has reached MMI [maximum medical improvement]" with respect to his cervical and lumbar spine but was "still quite symptomatic to the right knee and to the right shoulder area, as well

---

[2] Jones had treated with Dr. Heard for injuries received in a 2007 accident.

as to his lower back and to his cervical spine area." Dr. Gidman indicated that Jones' activity level would be sedentary to light.

On May 15, 2020, Jones participated in a functional capacity evaluation (FCE) at the Fontana Center. Shortly thereafter, Jones participated in another FCE performed at a facility chosen by his counsel.

Craft Resource and Accident Fund admitted that Jones was in the course and scope of his employment on the day of the subject accident but disputed the extent, scope, nature, and duration of Jones' injuries. Craft Resource and Accident Fund paid workers' compensation benefits, indemnity benefits, and medical benefits.

Craft Resource and Accident Fund terminated indemnity benefits on March 28, 2022. They had been paying Jones $665.00 per week. Craft Resource and Accident Fund contended that Jones was overpaid indemnity benefits by $265.00 per week as of February 1, 2022, with a total overpayment of $45,482.57. Jones filed a disputed claim for compensation, form 1008, on March 20, 2022.

Dr. Thad Broussard performed an IME on November 29, 2022, and concluded that Jones could not return to the type of work that he was doing at the time of the subject accident but that an up-to-date FCE was necessary to determine whether Jones was able to return to some type of gainful employment. Jones participated in two FCEs in February and March of 2023. On February 1, 2023, David W. Hite (Hite) conducted an FCE. Hite noted that he "did not observe any self-limiting, guarded or exaggerated behavior" and that it was his "opinion that the results of this evaluation represent a valid and reliable description of the patient's current functional capabilities and limitations."

Trevor Bardarson (Bardarson) conducted an FCE on March 30, 2023, and concluded that Jones could work at a demand level of sedentary to light. Bardarson opined that Jones "likely has a greater ability due to the presence of submaximal

efforts" and "recommended that the results of this FCE be accepted as an indicator of what [Jones] is <u>willing to do at this time</u> rather than as an indicator of true maximum functional capacities." (Emphasis in original.)

Jones obtained leave of court to file an amended form 1008 on August 24, 2023. Jones sought to have the court recognize Dr. Stubbs as Jones' choice of physician for treatment of Jones' right knee. Craft Resource and Accident Fund answered the amended form 1008 and alleged that Jones was doctor shopping.

On December 11, 2023, Dr. Thomas R. Butaud performed an IME and concluded that Jones was at MMI and suggested that an FCE be done. Dr. Butaud suggested that Jones do a work hardening program with significant stretching. Using the Guides to the Evaluation of Permanent Impairment, Sixth Edition, Dr. Butaud assigned Jones a fourteen percent (14%) whole person impairment.

In early 2024, two doctors opined that Jones could perform light/sedentary work. In his deposition taken on February 5, 2024, Dr. Butaud opined that Jones could do sedentary to light-duty work. On March 4, 2024, Dr. Stubbs released claimant to light/sedentary work pending a right knee replacement.

At the time of trial, March 14, 2024, Jones remained under the care of Dr. Stubbs for right knee pain, Dr. Mark McDonnell for back pain, and Dr. Daniel Hodges for pain management.

In ruling on this matter, the WCJ stated:

> There were various misstatements of fact by Mr. Jones both [sic] about the wages earned, the wage rate, the accident, the injuries, prior accidents, prior injuries, prior claims with regards to accidents. The claimant has a long history with regards to prior accidents and prior claims, and throughout his testimony there were various times that there were misstatements with regards to his prior treatment, injuries, accidents, and claims.

On July 10, 2024, the WCJ signed a judgment in favor of Craft Resource and Accident Fund. The judgment found as follows: (1) the average weekly wage is

5

$600.00 based on the forty-hour presumption with a corresponding workers' compensation rate of $400.00; (2) Jones is capable of light-duty employment with the ability to earn ninety percent (90%) of his average weekly wage; (3) indemnity benefits are not owed from March 28, 2022; (4) Jones' choice of physician is Dr. Duval; (5) Jones is not entitled to indemnity benefits based on vocational rehabilitation identifying jobs, which are within his physical limitations and enable him to earn ninety percent (90%) of his pre-accident wages; (6) Jones entered into an authorized settlement on December 15, 2019; (7) Jones owes reimbursement for an unauthorized settlement and forfeits all benefits from December 15, 2019, until he buys back the amount of the settlement; and (8) this claim is dismissed with prejudice. Jones requested reasons for judgment and timely filed a devolutive appeal. The trial court gave oral reasons for ruling on July 16, 2024.

## IV.

## <u>LAW AND DISCUSSION</u>

*Calculation of Average Weekly Wage*

"The calculation of a claimant's average weekly wage is a factual finding subject to the manifest error-clearly wrong standard of review." *Nitcher v. Northshore Reg'l Med. Ctr.*, 11-1761, p. 17 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1013, *writ denied*, 12-1230 (La. 9/21/12), 98 So.3d 342. Louisiana Revised Statutes 23:1021(13)(a)(i) (emphasis added) provides for the determination of the average weekly wage as follows: "If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage multiplied by the average actual hours worked in the four full weeks preceding the date of the accident **or** forty hours, whichever is greater[.]"

"It is well settled that overtime and bonuses are to be considered in the calculation of a claimant's average weekly wage." *Henry v. Bolivar Energy Corp.*,

95-1691, p. 3 (La.App. 3 Cir. 6/5/96), 676 So.2d 681, 683, *writ denied*, 96-1749 (La. 10/11/96), 680 So.2d 644. However, the courts differ in determining how to apply La.R.S. 23:1021(13)(a) when the employee worked less than four full weeks prior to the accident.

Jones was paid $7.25 per hour for working thirty-two hours for the pay period of August 6–12, 2018. Jones worked only four days. This hourly rate cannot be used in determining Jones' average weekly wage because it is not encompassed in the four weeks preceding the day of the accident. Jones states in brief that "it would be improper, unfair, and incorrect to use the August dates in calculation of the average weekly wage in this claim." We note that the WCJ did not consider those dates in the calculation of the average weekly wage.

For the pay period of September 10–16, 2018, Jones was paid $15.00 per hour for nineteen hours and $15.00 per hour for ten hours of driving time. From September 17–23, 2018, the week of the accident, Jones was paid $15.00 per hour for forty hours and $22.50 per hour for forty-five overtime hours at $22.50.

It is clear that Jones did not work for a full four weeks prior to the date of the accident. The WJC found that the forty-hour presumption based on the rate of $15.00 per hour should be utilized and found that Jones' average weekly wage was $600.00, with a compensation rate of $400.00.

Jones contends that the WCJ committed legal error in improperly calculating his average weekly wage by applying the forty-hour presumption. He contends that his work schedule was twelve hours per day, seven days per week for the duration of the project, which was expected to be ninety days. Jones contends that his average weekly wage was the maximum of $886.38,[3] with a compensation rate of $665.00,

---

[3] In his disputed claim for compensation, Jones alleged that his average weekly wage was $1,612.50, which is based on his working eighty-five hours (forty hours at $15.00 per hour and forty-five hours at $22.50 per hour) for the September 17–23, 2018 pay period.

based on his working sixty-six hours for a time period of six consecutive days until the accident. He notes that "[d]espite working at least 66 hours in a 6 day period, only 9 hours of overtime included because the earnings are reflected over two pay periods. Claimant's overtime started to accrue on the 4th shift of the weekly pay period, September 20[.]"

Jones cites several cases in support of his position, but Craft Resource and Accident Fund argue that all of them can be distinguished. In *Vincent v. Justiss Oil Co., Inc.*, 94-329 (La.App. 3 Cir. 11/2/94), 649 So.2d 508, *writ denied*, 94-2869 (La. 1/27/95), 650 So.2d 242, the claimant had only been employed ten days prior to his injury. In those days, the employee worked 118 hours. The defendants argued that the average weekly wage should be determined by dividing 118 by four weeks. This court said:

> The flaw in this argument is Toby worked only two weeks before he was injured. The statute clearly instructs us to calculate an employee's weekly wage by using the hours worked in the four weeks before the accident, i.e., it is assumed the employee has worked for the employer for at least four weeks. If we were to divide the number of hours Toby worked by four, we would include time when Toby was not employed by Justiss. This calculation method is unjust. The result arrived thereby is not supported by the statute and conflicts with our jurisprudential rule to liberally construe worker's compensation statutes in favor of the injured worker. *See Fusilier v. Slick Construction Co.*, 640 So.2d 788 (La.App. 3 Cir. 1994); *Lester v. Southern Casualty Ins. Co.*, 466 So.2d 25 (La.1985).

*Id.*, at 510. This court went on to affirm the calculation of the average weekly wage by dividing 118 by two weeks to arrive at fifty-nine average hours. The hourly rate was $9.00 multiplied by forty hours ($360.00) plus overtime wages of nineteen hours at $13.50 per hour ($256.50) for a total of $616.50 as the average weekly wage.

However, using this method of calculation depends on the jurisprudential rule of liberal construction in favor of the injured worker. *See Upchurch v. Randall Well Serv.*, 45,056 (La.App. 2 Cir. 4/14/10), 34 So.3d 500, and *Fusilier*, 640 So.2d 788.

8

As recognized in *Juarez v. AJ Lazlo Construction, LLC*, 22-575 (La.App. 5 Cir. 9/20/23), 370 So.3d 1280, this rule has been overruled by statue. In 2012, the Louisiana Legislature enacted La.R.S. 23:1020.1(D)(2), which states, in part: "the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee." All of the cases cited by Jones were decided before 2012, except *Ceasar v. Flexforce Employment Professionals, Inc.*, 23-586 (La.App. 3 Cir. 3/20/24), 381 So.3d 1072, wherein this court recently declined to follow *Juarez*. However, in *Ceasar*, the claimant worked 130.75 hours in the three weeks prior to the accident, and this court found that the WCJ committed manifest error by ignoring the jurisprudence regarding overtime wages. This court calculated Ceasar's average weekly wage of $544.44 by dividing 130.75 by the three weeks he worked to arrive at an average of 43.58 hours per week, then multiplying forty hours by his $12.00 per hour wage ($480.00) plus 3.58 hours of overtime at $18.00 per hour ($64.44).

Such is not the case here. The WCJ did not ignore Jones' overtime wages, and there were no full work weeks preceding the accident on which to base the calculation. There is no legislative or jurisprudential authority for Jones' suggestion that we pick certain days out of two different work weeks or base his average weekly wage on what he expected to make. Further, the cases cited by Jones suggest that the proper calculation is to divide the regular and overtime hours worked by the number of weeks worked to determine the average number of hours worked per week, but this is not the calculation that Jones wants to use in his own case.

Here, the WCJ followed the basic rules of statutory construction and did not commit legal error in using the forty-hour presumption because La.R.S. 23:1021(13)(a)(i) (emphasis added) provides that the court use "the average actual hours worked in the four full weeks preceding the date of the accident **or** forty hours,

9

whichever is greater[.]"  Since there are not four full weeks, the forty-hour presumption applies.  Finding no legal or manifest error, we affirm the WCJ's finding as to Jones' average weekly wage.

*Unauthorized Settlement and Forfeiture of Benefits*

In *McCallon v. Energy Services, LLC*, 18-880, p. 10 (La.App. 3 Cir. 4/24/19), 271 So.3d 249, 258, *writ denied*, 19-850 (La. 9/17/19), 279 So.3d 381, this court explained:  "If an employee settles a personal injury claim against a 'third person' without his employer's consent, he forfeits 'the right to future compensation, including medical benefits.'  La.R.S. 23:1102(B)."  The employer must prove:  "(1) an aggravation of the work-related injury, and (2) the payment of benefits as a result of the aggravation."  *Hatchell v. St. Michael PFU, LLC*, 22-46, p. 5 (La.App. 3 Cir. 3/1/23), 358 So.3d 596, 600.

In an amended answer filed on October 3, 2022, Craft Resource and Accident Fund claimed that the December 14, 2018 accident caused an aggravation of Jones' injuries and that Jones' unauthorized settlement of that claim should result in a forfeiture of the right to prosecute his workers' compensation case against them until he buys back pursuant to La.R.S. 23:1101, *et seq*.  Following the trial, the WCJ found that the settlement was unauthorized and resulted in a forfeiture of benefits.

At trial, both his own counsel and defense counsel questioned Jones about the December 14, 2018 accident.  He testified that a day or two after the hit-and-run accident, he went to University Medical Center for complaints of left hip and back pain.  His hip was not injured in the work-related accident, but his back was.  Jones testified that the back pain from the hit-and-run accident "was a little different" and lasted about four days.  Jones admitted that he did not reach out to Craft Resource of Accident Fund for permission to settle his claim:

10

Q. All right. So just to clarify, you settled a motor vehicle accident that occurred after our accident where among your injuries was your lower back, and you settled that without getting permission for either the employer or the workers' comp carrier to do that?

A. That is correct.

Martin testified that he did not know anything about the December 14, 2018 accident and settlement and did not consent to the settlement.

Jones contends that Craft Resource and Accident Fund failed to prove that the December 14, 2018 accident resulted in an aggravation to his work-related injuries. Jones points to his deposition testimony that his pain was not worsened by the impact of the hit-and-run accident. But, Jones did testify at trial that the December accident cause pain in his back and that he told the doctor that the left side of his back was hurting immediately after the December accident. We find no manifest error in the WCJ's finding that the December accident aggravated his back injury, that benefits were paid as a result of the aggravation, that Jones settled his claim with regard to the December accident without the approval of Craft Resource and/or Accident Fund, and that this unauthorized settlement resulted in the forfeiture of benefits.

*Benefits*

Jones asserts that if this court agrees that his average weekly wage should include overtime hours, his correct compensation rate is $665.00, and he is owed past temporary total disability (TTD) benefits in the amount of $67,168.00 (101 weeks at $665.00 per week). Jones argues that he was entitled to past temporary total indemnity benefits from the date benefits were terminated, March 28, 2022, until he was released to return to work on March 4, 2024. He asserts that he is entitled to supplemental earnings benefits (SEB) for the period from March 4, 2024, to present in the amount of $223.18 per week (based on an average weekly wage of $886.38 and his ability to work at a light/sedentary job at $13.79 per hour).

11

Craft Resource and Accident Fund assert that all benefits paid after the date of the unauthorized settlement, December 15, 2019, were forfeited such that Jones received monies that he was not owed and that all benefits paid after December 15, 2019, are credited towards future benefits, if any are owed. Evidence introduced at trial established that Craft Resource and Accident Fund paid a total of $118,600.50 to Jones. They argue that based on an average weekly wage of $600.00 and the corresponding compensation rate of $400.00, that total payment covers 296.5 weeks, which would cover payments through June 13, 2024, three months after the trial of this matter, such that no further benefits are owed.

Louisiana Revised Statutes 23:1221(1) provides that an employee who suffers a work-related injury is entitled to TTD when he cannot engage in any self-employment or occupation for wages, and such benefits "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required."

Louisiana Revised Statutes 23:1221(3) provides that an injured employee who is entitled to SEB when the work-related injury results in an inability to earn at least ninety percent (90%) or more of his pre-injury wage. "The employee bears the initial burden of proof to show that the injury resulted in an inability to earn that amount." *Guillory v. St. Michael PFU, LLC*, 23-674, p. 9 (La.App. 3 Cir. 4/17/24), 389 So.3d 140, 147. If the employee meets this burden, "the burden shifts to the employer who must prove that the employee is physically able to perform a certain job and that such a job was offered to the employee or available to the employee in her or the employer's reasonable geographic location." *Id. citing* La.R.S. 23:1221(3)(c)(i).

12

Ashley Barbier (Barbier) was accepted as an expert in the field of vocational rehabilitation counseling. She first interviewed Jones on May 18, 2023. She testified that Jones had transferable skills in the areas of customer service, preventative maintenance, technical skills, safety procedures, active listening, attention to detail, problem solving, and adaptability. She did a job search within a thirty-mile area of Jones' residence in New Iberia, Louisiana. Most of the jobs she identified were in Lafayette, Louisiana. Barbier testified that Jones told her that he had not thought about what kind of jobs he could do because he was still waiting on treatment. Barbier identified several different jobs and notified Jones' counsel of their availability. The jobs were: (1) patient access representative at Ochsner Heath Systems at $13.00 per hour for forty hours per week, approved by Dr. Duval, Dr. Gidman, Dr. Williams, and Dr. McDonnell; (2) dispatcher at Acadian Ambulance at $15.00 per hour, approved by Dr. Duval, Dr. Gidman, Dr. Williams, and Dr. McDonnell; (3) customer service representative at State Farm at $14.00 per hour for forty hours per week, approved by Dr. Duval, Dr. Gidman, Dr. Williams, Dr. McDonnell, and Dr. Stubbs; (4) dispatcher at Halliburton at $12.50 per hour for forty hours per week, approved by Dr. Duval, Dr. Gidman, Dr. Butaud, and Dr. McDonnell; (5) patient access representative at CIS at $13.00 per hour for forty hours per week, approved by Dr. Duval, Dr. Gidman, Dr. Butaud, Dr. Williams, and Dr. McDonnell; (6) alarm dispatcher at Acadian Total Security at $14.00 per hour for forty hours per week, approved by Dr. Butaud, Dr. Williams, and Dr. Stubbs; and (7) non-emergency transport dispatcher at Medi-Trans at $14.00 per hour; (8) customer service representative at CVS (work from home job) at $15.00 per hour for forty hours per week; and (9) dispatcher at Acadiana Security Plus at $15.00 per hour for forty hours per week. The average pay of all the jobs Barbier identified is $13.79 per hour.

Jones' argument that he is entitled to SEB is predicated upon his average weekly wage being $886.38 and his earning capacity being $551.60 per week (based on the average pay of $13.79 per hour for the jobs identified by Barbier). We have already determined that the WCJ correctly determined that the average weekly wage in this case is $600.00. Ninety percent of $600.00 is $540.00. Jones' earning capacity of $551.60 exceeds that amount. The WCJ noted that a functional capacity evaluation was done and stated: "Jobs were identified. The Court does not believe the excuses given by Mr. Jones with regards to these jobs. Therefore, the Court finds that Mr. Jones is capable of earning 90 percent of his preaccident wages based on the jobs identified and Dr. Duval's release to return to work." We find no manifest error in the WCJ's findings of fact and consequential denial of SEB.

*Choice of Physician*

Louisiana Revised Statutes 23:1121(B)(1) provides that an employee has "the right to select one treating physician in any field or specialty." If the employee wishes to change his initial choice of treating physician within a certain specialty, the employee must "obtain prior consent from the employer or his workers' compensation carrier." *Id*. "The statute does not permit 'doctor shopping.'" *Southern v. Servpro D E Inv.*, 55,874, p. 8 (La.App. 2 Cir. 8/28/24), 400 So.3d 974, 980, *writ denied*, 24-1190 (La. 12/11/24), 396 So.3d 963. To prove entitlement to change the choice of physician, the burden is on the claimant to prove the medical necessity of the treatment by the new choice of physician. *Lang-Parker v. Unisys Corp.*, 00-800 (La.App. 1 Cir. 10/5/01), 809 So.2d 441.

Dr. Heard first referred Jones to Dr. Duval in October 2019. Dr. Duval performed a right knee arthroplasty on November 25, 2019. Jones last saw Dr. Duval in June of 2020. Dr. Duval's medical records, which were admitted into evidence as Defense Exhibit 12, indicate that as of June 22, 2020, Dr. Duval noted "RTW per

FCE." At trial, Jones testified that Dr. Duval did not make him aware of that and that he did not remember Dr. Duval telling him anything about returning to work. When shown his deposition testimony, Jones recalled saying that Dr. Duval did say that he could return to work and that he was released by Dr. Duval to return to work based on the FCE. Jones insisted that his right knee was still bothering him at that point.

Jones explained the situation to Dr. Heard, who referred Jones to Dr. Stubbs for a right knee evaluation. Accident Fund approved the referral, and Dr. Stubbs saw Jones on September 9, 2021. Dr. Stubbs performed a right knee arthroscopy on September 17, 2021, and recommended a right total knee replacement in July of 2022. Accident Fund approved the treatment and arthroscopy but has not approved the total knee replacement. Jones notes that Accident Fund approved payments to Dr. Stubbs for an MRI and office visits even after sending correspondence to Dr. Stubbs and Jones' attorney advising that all treatment with Dr. Stubbs was de-authorized because Dr. Duval was Jones' choice of orthopedist to treat his knee.[4]

Based on the medical records and Jones' testimony, the WCJ determined that Dr. Duval was Jones' choice of physician. Jones testified that part of the reason he went to Dr. Heard for a referral to Dr. Stubbs was that Dr. Duval released him to return to work. Jones was questioned as follows:

> Q. And you simply chose not to go back to Dr. Duval because you disagreed with his opinions?
>
> A. That is correct.
>
> Q. Especially the opinion on you going back to work?
>
> A. No, based on my knee.
>
> Q. Going back to work based on your knee?

---

[4] Craft Resource and Accident Fund argue that La.R.S. 23:1204 provides that "[n]either the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter."

A.     If that's what you want to put it, but I know, like I said, based on my knee.

"The fact that the current physician released the claimant to return to work does not create medical necessity for a new choice of physician." *Southern*, 400 So.3d at 980. This court has recently stated: "Allowing a claimant to change physicians merely because of his own displeasure with his initial choice of physician, without any evidence concerning the medical necessity of the requested change, would impermissibly 'circumvent the requirement of medical necessity, negate Section 1121's 'one treating physician' rule, and authorize doctor shopping.'" *Moore v. Kellie's Sitting Servs., Inc.*, 20-391, p. 17 (La.App. 3 Cir. 12/16/20), 310 So.3d 698, 710, *quoting Reed v. St. Francis Med. Ctr.*, 44,211, p. 8 (La.App. 2 Cir. 4/8/09), 8 So.3d 824, 829.

In this case, we cannot say that the WCJ was manifestly erroneous in finding that Dr. Duval is Jones' choice of treating physician.

*Penalties, Attorney's Fees, Costs, and Legal Interest*

Jones argues that Craft Solution and Accident Fund are guilty of several violations of La.R.S. 23:1201, *et seq.*, including failure to properly calculated his average weekly wage resulting in an arbitrary termination of his indemnity benefits and the denial of the right total knee replacement recommended by Dr. Stubbs. We note, however, that "[t]he law is clear that 'an employer should not be penalized for bringing a close legal issue to court.'" *Timberlake v. Christus Health Cent. La.*, 13-166, p. 13 (La.App. 3 Cir. 10/30/13), 124 So.3d 1201, 1210, *quoting Burruss v. Centro Mgmt., Inc.*, 00-1274, p. 2 (La.App. 3 Cir. 2/28/01), 780 So.2d 630, 631. Since we have found no error in the calculation of the average weekly wage and that Dr. Duval is Jones' choice of treating orthopedist for his right knee complaints, we find no basis for the imposition of penalties and attorney's fees. For the same

reasons, costs and judicial interest will not be awarded to Jones in this case. Therefore, we affirm the WCJ's denial of penalties, attorney's fees, costs, and judicial interest.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the ruling of the WCJ in its entirety. Costs of this appeal are assessed to Kevin Jones.

**AFFIRMED.**